## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JERMAINE ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-3414 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| PARATECH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Paratech, Inc.'s ("Paratech") motion for summary judgment. (Defendant's Motion for Summary Judgment ("Mot. for Summ. J.") (Dkt. No. 27); Defendant's Memorandum in Support of Motion for Summary Judgment ("Mem.") (Dkt. No. 28).) [1] For the following reasons, Paratech's motion is granted.

### FACTUAL BACKGROUND

The facts outlined below are taken from the parties' Local Rule 56.1 statements, responses, and the materials cited therein, and are undisputed unless otherwise noted.

Plaintiff Jermaine Allison filed this lawsuit against Paratech on June 11, 2020, seeking monetary damages pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and Title I of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.* (Compl. (Dkt. No. 1), ¶ 1; Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts Supporting Summary Judgment ("Pl. Resp. to Def.

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

SOF") (Dkt. No. 34) ¶ 1.) Allison brings four counts against Paratech: (1) disability-based discrimination in violation of the ADA (Compl. ¶¶ 37–43); (2) retaliation in violation of the ADA (*id.* ¶¶ 44–51); (3) interference with Allison's exercise of his FMLA rights (*id.* ¶¶ 52–58); and (4) retaliation in violation of the FMLA (*id.* ¶¶ 59–64). At various points in the litigation, Allison has identified his disabilities as "chronic back pain," hypertension, and bad shoulders. (Pl. Resp. to Def. SOF ¶¶ 3, 4; Pl. Dep. Tr. (Dkt. No. 29-3) at 17:18–23.) In opposing Paratech's summary judgment motion, however, he pursues claims related to his chronic back pain and hypertension only. (*See generally* Plaintiff's Response in Opposition of Defendant's Motion for Summary Judgment and Brief in Support ("Opp'n") (Dkt. No. 33).) Allison's FMLA claims arise out of his request for paperwork to seek intermittent leave to potentially attend medical appointments for his back. (Pl. Resp. to Def. SOF ¶ 5.)

Paratech is a small business located in Frankfort, Illinois. (Defendant's Local Rule 56.1(d) Statement of Material Facts ("Def. SOF") (Dkt. No. 29) ¶ 6; Pl. Resp. to Def. SOF ¶ 7.)[2] Allison worked for Paratech as a forklift driver from June 18, 2018 until July 16, 2019. (Def. SOF ¶ 7; Pl. Resp. to Def. SOF ¶ 8.) He was an at-will employee. (Def. SOF ¶ 8; Pl. Resp. to Def. SOF ¶ 8.) Paratech's employee handbook, which Allison received, "explains/addresses attendance in several sections and explains violations may result in discipline up to and including discharge." (Pl. Resp. to Def. SOF ¶¶ 11–12.)

Immediately upon his hire in June 2018, Allison received nine hours of paid time off ("PTO") and nine hours of paid vacation. (*Id.* ¶ 14.) Allison used up all his PTO and paid

---

[2] In Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts Supporting Summary Judgment, Allison inadvertently misnumbered certain of the paragraphs to which he was responding. Where this may cause confusion, we include citations to Defendant's Local Rule 56.1(d) Statement of Material Facts as well.

vacation for 2018 when he called off work on August 6 and September 10, 2018, because of family obligations. (*Id.* ¶ 15.) Later, a thumb injury that required stitches caused Allison to miss work on October 1, 2018, but this absence was excused because Allison provided a doctor's note. (*Id.* ¶ 16.) The following day, October 2, Allison did not show up for work after initially stating that he would be in late due to transportation issues. (*Id.* ¶ 17.) This violated Paratech's "no-show" policy, so Allison received a verbal initial warning for his October 2 absence. (*Id.*) Allison also received a written warning for attendance after he was absent from work on November 5, 2018, due to an upset stomach. (*Id.* ¶ 18.) On December 10, 2018, Allison called Paratech and left a voicemail saying he could not come in to work because he could not find a babysitter for his grandson. (*Id.*)[3] Because Allison did not have any PTO or vacation time remaining at this time, he received a written warning. (*Id.*) In his annual evaluation, Allison received positive comments for productivity and work ethic, but was told that he needed to improve his attendance because he had a "repeated pattern of attendance issues." (*Id.* ¶ 19.)

On January 1, 2019, Allison received a fresh bank of leave, including 40 hours of PTO and 40 hours of paid vacation. (*Id.* ¶ 20.) That January, Allison: (1) used all of his vacation hours; (2) took three days of PTO, from January 11 through January 16, for medical leave related

---

[3] Allison disputes Paratech's "interpretation and transcription" of the December 10 voicemail, claiming that "the voicemails were not produce[d]." (Pl. Resp. to Def. SOF ¶ 18.) However, Allison neither offers an alternate "interpretation and transcription" of the voicemails nor cites any evidence to support his assertion. Moreover, Paratech submitted an email showing that audio recordings of Allison's voicemails were transmitted to Allison's counsel on February 23, 2021. (*See* Dkt. No. 38-1.) Because Allison has put forth no evidence supporting his denial, we consider this fact to be undisputed. *See Austin v. City of Chicago*, Case No. 14-cv-9823, 2018 WL 1508484, at *1 (N.D. Ill. Mar. 27, 2018); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial.")

to a back injury; (3) took bereavement leave[4] on January 17 and January 18 to handle funeral arrangements for his father; and (4) called off work on January 28, January 29, January 30, and January 31, due to transportation issues. (*Id.* ¶ 22.) Because he had already used all his vacation and PTO hours by January 29, Allison received a second written warning for his absences on January 30 and January 31. (*Id.* ¶¶ 21–23.)[5] After he missed work again on February 1, 2019— this time because he could not get a ride to work—Allison received a third and final written attendance warning. (*Id.* ¶ 24.) Per Paratech's policies, after an employee receives a final written attendance warning, that employee is subject to termination for any subsequent unexcused absence. (*Id.*) Less than two weeks later, on February 12, 2019, Allison called Paratech to say that he would not be able to make it in because his coworker could not drive him to work. (*Id.* ¶ 25.) By this time, Allison had no further vacation time or PTO left, and he was aware that he was on his final disciplinary warning and could be terminated for any additional unexcused absence. (*Id.* ¶ 26.) The record does not reflect what, if anything, Paratech did in response to this absence. (*See, e.g.*, Dkt. No. 29-7 (no indication that Allison received a warning for the February 12, 2019 absence).)

Under Paratech's policies, medical leave is excused even after exhaustion of PTO and vacation time if the employee provides medical documentation excusing the absence and

---

[4] Per Paratech policy, employees are entitled to take bereavement leave in addition to PTO and vacations. (Dkt. No. 29-8 at 28–29.)

[5] Allison disputes that he "used all 80 hours of his paid PTO and vacation leave…and three days of paid bereavement leave" by January 29, 2019. (Pl. Resp. to Def. SOF ¶ 21.) However, he cites no evidence to support this denial. Therefore, that fact is deemed to be undisputed. *Austin*, 2018 WL 1508484, at *1; *Malec*, 191 F.R.D. at 584.

releasing the employee to return to work. (Pl. Resp. to Def. SOF ¶¶ 27–28.)[6] On May 20, 2019, Allison left work after 15 minutes, stating that he had to take his pregnant girlfriend to the hospital. (*Id.* ¶ 29.) He was permitted to leave, but his supervisor, Amy Watson, reminded him (via text message) to bring in documentation for the hospital visit. (*Id.*) While waiting with his girlfriend in the emergency room, Allison began to experience chest pain; he was evaluated in the emergency room and was diagnosed with hypertension. (*Id.* ¶ 32.) However, he was not admitted to the hospital. (*Id.* ¶ 34.)

Allison returned to work after the May 20 emergency room visit, but Watson sent him home because he did not bring a doctor's note documenting his release to return to work. (*Id.* ¶ 35.) Watson also reminded Allison that he was on a final warning for attendance and that he needed to submit medical documentation for his absence and release to return to work. (*Id.*) On May 28, 2019, Allison told Watson that he would not be able to get the medical release until his next doctor's appointment on Friday, May 31, 2019. (*Id.*) At that appointment, Allison underwent a stress test, which showed normal results, and Allison's doctor wrote him a note that released him to work without restrictions on June 3, 2019. (*Id*. ¶ 36.) Paratech excused Allison's absences from May 20 to June 3. (*Id.*)

On June 24, 2019, Allison told Paratech he could not come in to work because his blood pressure was too high. (*Id.* ¶ 37; Plaintiff's Local Rule 56.1 Statement of Additional Material Facts ("Pl. SOF") (Dkt. No. 35) ¶ 10.) He went to work the next day, June 25, but he did not bring a doctor's note with him. (Pl. Resp. to Def. SOF ¶ 37.) Allison approached Paratech's Human Resources Director, Mia Tischer, and told her that his doctor had suggested that he ask

---

[6] Allison disputes this policy as applied to him, but the testimony he cites does not support his denial. Therefore, we treat paragraphs 27 and 28 of Defendant's Local Rule 56.1(d) Statement of Material Facts as undisputed.

her for intermittent FMLA leave so he could attend medical appointments related to his back. (*Id.* ¶ 38.) Tischer provided Allison with FMLA paperwork that day. (*Id.*)

Due to concerns about his blood pressure, Allison called off work on July 15, 2019. (*Id.* ¶ 40.) At that time, he was aware that he had already received a third and final warning for attendance, and that another unexcused absence could result in his termination. (*Id.* ¶ 46.) Watson asked him to bring in a doctor's note to return to work, but Allison refused to do so. (Pl. Dep. Tr. at 78:9–79:4.) Before the close of business on July 15, Tischer and Watson decided to terminate Allison for excessive absenteeism. (Def.'s Resp. to Pl.'s Statement of Additional Material Facts ("Def. Resp. to Pl. SOF") (Dkt. No. 39) ¶ 13; Tischer Dep. Tr. (Dkt. No. 29-4) at 18:9–10; Watson Dep. Tr. (Dkt. No. 29-5) at 31:1–6.)

Later that evening, Allison texted Watson an image of a doctor's appointment scheduled for July 18, 2019. (Dkt. No. 29-15 at 6; Pl. Dep. Tr. at 76:10–77:10.) The text message did not specify the purpose of the visit. (Dkt. No. 29-15 at 6.) However, Allison later testified that he requested the appointment to address his FMLA paperwork and other concerns. (Pl. Dep. Tr. at 76:17–77:10.)

The following day, July 16, Tischer and Watson met with Allison and advised him that Paratech was terminating him for excessive absenteeism and failure to comply with the relevant Paratech absentee policies. (Watson Dep Tr. at 33:7–34:11.) Allison did not mention the July 18, 2019 doctor's appointment during that meeting. (Pl. Resp. to Def. SOF ¶ 47; Watson Dep. Tr. at 33:7–34:16; Tischer Dep. Tr. at 24:14–21.) Additionally, as of the time of his termination, Allison still had not returned the FMLA paperwork that he had received on June 25. (Pl. Resp. to Def. SOF ¶¶ 38–39; Pl. Dep. Tr. at 73:6–15.)

When asked at his deposition how his alleged disabilities impact his life, Allison testified that there were no jobs that he would not apply for or accept because of his disabilities and that he was able to function normally in his day-to-day life. (Pl. Resp. to Def. SOF ¶ 48.) While employed at Paratech, Allison did not request and was never denied leave for a medical appointment for his back. (*Id.* ¶ 51.) Allison has not seen a doctor for his back condition since leaving Paratech, and the first time he saw a doctor for his blood pressure since leaving Paratech was two weeks prior to his deposition. (*Id.* ¶¶ 52, 53.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *Weber v. Univs. Rsch. Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). We do not "'judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.'" *Torres v. Pfister*, No. 15 CV 11547, 2017 WL 3386120, at *1 (N.D. Ill. Aug. 7, 2017) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009)).

A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 334 (7th Cir. 2011) ("'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to

7

return a verdict for that party.'") (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Torres*, 2017 WL 3386120, at *1 (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014)); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S. Ct. at 2512.

## ANALYSIS

### I. Allison's ADA Discrimination Claim (Count I)

Allison alleges that Paratech violated the ADA by unlawfully terminating and intentionally discriminating against him because he suffers from chronic back pain and high blood pressure. (Compl. ¶¶ 40, 41; Opp'n at 9.)

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004). To prevail on an ADA discrimination claim, a plaintiff must prove that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) the defendant took an adverse employment action against him because of his disability or without making a reasonable accommodation for it. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (citing *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)); *Nutall v. Rsrv. Marine Terminals*, No. 1:14 CV 4738, 2015 WL 9304350, at *4 (N.D. Ill. Dec. 22, 2015) (citing *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)). The Seventh Circuit has "move[d]

away from the many multifactored tests" previously used to test a plaintiff's proof in employment discrimination cases, and has since directed courts to "decide, when considering the evidence as a whole, 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge ....'" *Monroe*, 871 F.3d at 504 (citing *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Paratech argues that it is entitled to summary judgment on Allison's ADA discrimination claim because (1) Allison has not demonstrated that he is disabled for ADA purposes, (2) Allison has not performed the essential functions of his job, and (3) Allison cannot show that Paratech terminated him due to an alleged disability. (Mem. at 8–12.) We address each argument in turn.

### A.     Whether Allison is Disabled for ADA Purposes

Paratech groups its arguments as to why Allison is not disabled for ADA purposes by medical condition, starting with Allison's hypertension followed by Allison's back pain. Following this convention, we will begin with arguments related to Allison's hypertension.

### 1.     Hypertension

First, Paratech argues that there is no evidence that Allison had hypertension because he never produced medical records reflecting such a diagnosis. (Mem. at 8–9.) But Paratech does not cite any authority to support the proposition that such documentation is necessary to establish a disability under the ADA. (*See generally* Mem.) And there is countervailing evidence that Allison did have hypertension while employed at Paratech. Namely, Allison testified that he was diagnosed with hypertension in the first half of 2019. (*See* Pl. Dep. Tr. at 31:2–32:12.) Because there is an issue of fact as to whether Allison had hypertension during the relevant period, we cannot enter summary judgment on this basis.

Next, Paratech argues that Allison's hypertension is not a "disability" for ADA purposes because it does not substantially limit one or more of Allison's major life activities and has not interfered with his ability to find jobs. (Mem. at 9.) The problem with this argument is that it does not engage with the complete definition of a "disability" under the ADA. The statute defines a disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of the afflicted individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The question of whether an impairment substantially limits one or more of a person's major life activities is not relevant to the third, "regarded as" prong, as Allison need not show that the alleged impairment limits or is perceived to limit a major life activity to prevail on this prong. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.") (emphasis added). Because Paratech has failed to explain how Allison cannot show disability under the "regarded as" prong, this argument fails.

Finally, Paratech argues that Allison should be barred from claiming high blood pressure as a disability because Allison did not disclose that condition in either the Complaint or his interrogatory responses. (Mem. at 9.) Paratech devotes two sentences, with no relevant authority, to this argument in its opening brief. (*Id.* at 1, 9.) Paratech spends slightly more time on this argument in its Reply, but again, does not cite relevant authority to support its argument. (See Defendant's Reply Memorandum in Support of Motion for Summary Judgment ("Reply") (Dkt. No. 38) at 6.) The Seventh Circuit has "repeatedly warned that perfunctory and

10

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. . . ." *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) (internal quotations and citations omitted); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 705 (7th Cir. 2010) (concluding that plaintiff had waived an argument where it was not fully developed). Because Paratech has not provided pertinent authority to support this argument, it is waived. *Useni*, 516 F.3d at 658; *Gross*, 619 F.3d at 705. We therefore conclude there is a triable issue of fact as to whether Allison's hypertension caused him to be disabled for ADA purposes.

### 2. Back Pain

Paratech's argument concerning Allison's back pain fares no better. In Paratech's opening brief, Paratech writes that Allison was absent for back pain in January 2019 but never again missed work due to that condition, complained of that condition, or sought an accommodation for that condition. (Mem. at 9–10.) Additionally, Paratech notes that although Allison requested FMLA forms for possible leave related to his back, he did not return those forms or request leave to seek treatment or accommodations related to his back. (*Id.* at 10.) Paratech also finds it significant that Allison has not sought treatment for his back since leaving Paratech. (*Id.*)

These observations, however, are not tethered to the ADA's definition of a "disability." *See* 42 U.S.C. § 12102(1). We cannot tell which, if any, of the subparts of that definition Paratech contends Allison cannot meet. We are not required to scour the parties' submissions to "piece together appropriate arguments" or otherwise "make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (internal quotation marks and citation omitted); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). To the extent Paratech intended to argue that Allison's

back pain is not a disability for ADA purposes because Allison has not shown that it substantially limits one or more of his life activities (*see* Mem. at 11), that argument suffers from the same defect as Paratech's argument regarding hypertension—it does not engage with the complete definition of a disability for ADA purposes. *See* 42 U.S.C. § 12102(1).

Paratech attempts to cure some of these defects in its Reply, arguing, among other things, that Paratech did not regard Allison as disabled as a result of his back condition because he did not apprise them of sufficient facts to conclude that he was disabled. (Reply at 10.) However, arguments raised for the first time in reply are waived. *See Eberhardt v. Brown*, 580 F. App'x 490, 491 (7th Cir. 2014) (observing that litigants waive arguments that they make for the first time in reply briefs); *Aparcedo v. Life Time Fitness, Inc.*, No. 16 C 1927, 2016 WL 5848955, at *2 (N.D. Ill. Oct. 6, 2016) (same). But even if we were to credit these arguments, there would be issues of fact that preclude summary judgment. Take, for example, Paratech's argument that it did not regard Allison as disabled due to his back condition. In Paratech's view, it had no reason to believe that Allison was disabled as a result of his back condition because he had limited absences related to his back, and his doctor released him to work after those absences. (*See* Reply at 7–8.) However, a reasonable factfinder might view the evidence differently, concluding that Paratech regarded Allison as disabled because his back condition was sufficiently serious for him to miss several days of work in January 2019, and that Paratech had reason to believe that Allison had chronic back pain because he told Tischer in June 2019 that he might need FMLA leave for appointments related to his back.

In short, Paratech has not persuaded us that there is no set of facts that would allow a reasonable finder of fact to conclude that Allison is disabled for ADA purposes. Therefore, we will consider Paratech's remaining arguments regarding Count I.

### B.      Whether Allison Met Paratech's Legitimate Expectations

Paratech also argues that Allison cannot satisfy the second element of an ADA discrimination claim because he did not meet Paratech's legitimate expectations concerning attendance. (Mem. at 11.) In response, Allison argues that he was qualified to perform the essential functions of the Warehouse Associate position because he was hired for that position. (Opp'n at 9.) Additionally, Allison argues that his absences in 2019 were "minimal and non-erratic" (by his count, 17 in total), and therefore, did not prevent him from performing the essential functions of his job. (*Id.*)

"An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." *Basden*, 714 F.3d at 1037 (citing *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001)). "A plaintiff whose disability prevents [him] from coming to work regularly cannot perform the essential functions of [his] job, and thus cannot be a qualified individual for ADA purposes." *Id.* (citing *Waggoner v. Olin Corp.*, 169 F.3d 481, 484–85 (7th Cir. 1999)). Courts examine an employee's ability to come to work, or otherwise perform the essential functions of his job, at the time of the adverse employment decision at issue. *Id.* (citing *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). On a motion for summary judgment, the plaintiff bears the burden of producing evidence sufficient to show that he would have been able to perform the essential functions of his job with reasonable accommodation. *Id.* (citing *Hammel v. Eau Falle Cheese Factory*, 407 F.3d 852, 863–64 (7th Cir. 2005)).

Allison's arguments on this point are not convincing. It is undisputed that Allison's "repeated absences in excess of his vacation and PTO allotments…violated Paratech's

attendance policies and caused Paratech operational problems." (*See* Pl. Resp. to Def. SOF ¶ 9.)[7] Because it is undisputed that Allison's numerous absences caused operational problems for Paratech, a reasonable jury could not find that he met Paratech's legitimate expectations. This dooms Allison's ADA discrimination claim. *See Moore v. CN Transp. Ltd.*, Case No. 17-cv-6188, 2021 WL 111489, at *11 (N.D. Ill. Jan. 12, 2021) (granting defendant's motion for summary judgment where plaintiff did not identify sufficient evidence for jury to conclude that he was meeting defendant's legitimate expectations regarding attendance); *Starchvill v. Dart*, No. 16 C 5713, 2018 WL 3456525, at *7 (N.D Ill. July 18, 2018) (granting summary judgment on an ADA claim where employee had failed to "perform the essential job function of regular attendance"). Nonetheless, we will also consider Paratech's causation argument.

### C.      Whether Allison's Termination Was Related to His Disabilities

Paratech also challenges the causation element of Allison's claim, arguing that the uncontroverted evidence shows that Allison was terminated because of his excessive absenteeism—not his purported disabilities. (Mem. at 10–12.) Allison counters that there is a clear link between his termination and his disabilities because he was terminated two days before a scheduled doctor's appointment, neither his supervisor Watson nor HR director Tischer spoke to him about that appointment before terminating him, and he had "no absences which contributed to his termination other than June 24, 2019 and July 15, 2019." (Opp'n at 10.) Moreover, Allison claims that Paratech does not mandate that its employees see a doctor the day that they call in sick, and his termination occurred after Paratech "was put on notice [Allison]

---

[7] Allison did not respond to this statement of fact. If a nonmoving party does not respond to a statement in the moving party's Rule 56.1 statement of material facts, we deem that statement to be undisputed. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *United States v. Salem*, 496 F. Supp. 3d 1167, 1170 (N.D. Ill. 2020).

requested FMLA and on notice of his upcoming July 18, 2019 doctor's appointment to have the FMLA documents completed." (*Id.*)

We are unpersuaded by Allison's argument. Tischer and Watson both testified that they decided to terminate Allison due to excessive absenteeism. (Watson Dep. Tr. at 12:17–13:24; Tischer Dep. Tr. at 18:9–10, 22:20–23:3.) Documents produced by Paratech show that Allison had a series of unexcused absences unrelated to his alleged disabilities throughout 2018 and 2019. (*See*, *e.g.*, Dkt. No. 29-7 (reflecting warnings for absences on 10/2/2018, 11/5/2018, 1/30/2019, 1/31/2019, and 2/1/2019); Dkt. No. 29-11 (voicemail transcript showing 10/2/2018, 1/30/2019, 1/31/2019, 2/1/2019, and 2/12/2019 absences due to transportation issues and 11/5/2018 absence due to stomach issues).) On February 4, 2019, Paratech admonished Allison that if he "fail[ed] to report to work, on time, everyday," he could face "further disciplinary action up to and including termination." (Dkt. No. 29-7 at 5; *see also* Pl. Resp. to Def. SOF ¶ 24.)

Nonetheless, Allison missed work again on February 12, 2019, due to transportation issues. (Dkt. No. 29-11 at 3; Pl. Resp. to Def. SOF ¶ 25.) At that point, Paratech was entitled to terminate Allison for absences that were totally unrelated to his alleged disabilities. (*See* Pl. Resp. to Def. SOF ¶¶ 24–25; Dkt. No. 29-11 (10/2/2018, 1/30/2019, 1/31/2019, 2/1/2019, and 2/12/2019 absences due to transportation issues; 11/5/2018 absence due to stomach issues).) Allison then missed work on June 24, 2019 and July 15, 2019, due to high blood pressure. (*See* Dkt. No. 29-11 at 4.) He did not bring a doctor's note to work following the June 24 absence. (Pl. Resp. to Def. SOF ¶ 37; Tischer Dep. Tr. at 18:22–19:23.) When asked to bring a note following his July 15 absence, Allison refused. (Pl. Dep. Tr. at 78:9–79:4.) Paratech concluded

that Allison was in violation of its attendance policy and decided to terminate him as a result. (Tischer Dep. Tr. at 18:9–10; Watson Dep. Tr. at 31:1–6.)

Because Paratech has offered "a legitimate, non-discriminatory reason" for Allison's termination, Allison "must provide some evidence that the reason is pretextual." *Castaneda v. Bd. of Educ. of the City of Chi.*, No. 16 C 10167, 2019 WL 1332181, at *10 (N.D. Ill. Mar. 25, 2019); *see also David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). "'In determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge.'" *Monroe*, 871 F.3d at 505 (quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal quotation marks and citation omitted)). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (internal quotation marks and citations omitted).

Allison has not met his burden. All Allison has done is provide a list of observations from the record without any explanation as to how these observations, considered together, create an issue of fact regarding causation. We are under no obligation to sift through the parties' submissions to cobble together appropriate arguments. *Little*, 71 F.3d at 641; *Dunkel*, 927 F.2d at 956. For example, Allison observes that neither Watson nor Tischer spoke with him about his July 18, 2019 doctor's appointment before he was terminated. (Opp'n at 10.) Allison makes no attempt to explain why Watson and Tischer's failure to speak with him about his upcoming appointment should be construed as evidence of pretext or otherwise advances his claims. *See Useni*, 516 F.3d at 658 ("[P]erfunctory and undeveloped arguments…are waived.");

16

*Gross*, 619 F.3d at 705 (concluding that plaintiff waived an argument that was not fully developed). At any rate, the record reflects that Watson and Tischer decided to terminate Allison *before* Allison texted Watson the image of his July 18, 2019 appointment. (*See* Watson Dep. Tr. at 31:1–6.) In other words, they made the decision to terminate him without regard to the July 18, 2019 appointment. Allison seems to argue that after making that decision, Watson was obligated to question him further about his text. (Opp'n at 10.) But Allison cites no authority to support his position. *See Useni*, 516 F.3d at 658; *Gross*, 619 F.3d at 705. At most Allison seems to argue that his termination was the result of misinformation; had Watson and Tischer known more, they would have made a different decision. (*See* Opp'n at 10.) However, we do not concern ourselves with the wisdom of business decisions—only with the legality of them. "In adjudicating claims under federal employment discrimination statutes, a court does not sit as a super-personnel department, second-guessing an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012) (internal quotation marks and citations omitted); *see also Argyropoulos*, 539 F.3d at 736 ("[I]n assessing a plaintiff's claim that an employer's explanation is pretextual, we do not sit as a super personnel review board that second-guesses an employer's facially legitimate business decisions.") (internal quotation marks and citations omitted). Absent a more fulsome explanation or authority supporting Paratech's position, no reasonable factfinder could conclude that Watson and Tischer's failure to inquire about the July 18, 2019 appointment is evidence of pretext.

Allison also contends that he "had no absences which contributed to his termination other than June 24, 2019 and July 15, 2019." (Opp'n at 10.) This argument fails because there is no support for it in the record. To the contrary, the available evidence shows that Allison was

17

terminated after a string of unexcused absences—not just his absences on June 24 and July 15. (*See, e.g.*, Watson Dep. Tr. at 12:17–13:17.) No reasonable factfinder could find for Allison on this basis.

That leaves Allison's argument that the timing of his termination warrants denying summary judgment. (Opp'n at 10.) Suspicious timing is rarely sufficient to create a triable issue of fact—particularly, where, as here, the record reflects previous instances of performance issues. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021); *Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006); *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005). Allison claims that the timing of his termination was suspicious because it came after he "requested FMLA" and Paratech was "on notice of his upcoming July 18, 2019 doctor's appointment to have the FMLA documents completed." (Opp'n at 10.) However, Allison's argument has a few significant flaws. First, there is no evidence that Allison formally requested FMLA leave—only that he requested FMLA paperwork. (*See, e.g.*, Pl. Resp. to Def. SOF ¶¶ 38–39.) Second, Allison offers no explanation as to why a reasonable factfinder would connect that request with his termination. The request occurred approximately three weeks before his termination, and Allison did not indicate that he needed FMLA leave at that time. (*Id.* at ¶ 38; Tischer Dep. Tr. at 36:20–37:11.) Rather, Allison suggested that he "was getting the paperwork to review it with his doctor." (Tischer Dep. Tr. at 36:20–37:11.) Third, there is no evidence to suggest that Paratech was on notice of the fact that Allison intended to complete his FMLA documents at the July 18, 2019 appointment. As discussed above, the text that Allison sent Watson regarding that appointment did not specify the purpose of the appointment. (Dkt. No. 29-15 at 6.) Nor did Allison provide further information about that appointment prior to his

termination. (Pl. Resp. to Def. SOF ¶ 47; Watson Dep. Tr. at 33:7–34:16; Tischer Dep. Tr. at 24:14–21.) In short, a reasonable factfinder would have to make too many inferential leaps to connect the June 25, 2019 request for FMLA paperwork and the July 18, 2019 appointment with Allison's termination.

Because no reasonable factfinder could conclude that Allison met Paratech's legitimate expectations or that Allison was terminated due to his alleged disabilities (as opposed to his absenteeism), we enter summary judgment against Allison on his ADA discrimination claim (Count I).

## II.     Allison's ADA Retaliation Claim (Count II)

In Count II of his Complaint, Allison alleges that Paratech violated the provisions of the ADA that prohibit employers from retaliating against employees who assert their right to be free from discrimination. 42 U.S.C. § 12203(a); (Compl. ¶¶ 44–51.) To prevail on his ADA retaliation claim, Allison must show that he (1) engaged in a statutorily protected activity, (2) suffered an adverse action, and (3) the protected activity caused the adverse action. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). An individual can pursue a retaliation claim even if his claims of discrimination are meritless. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018).

Paratech does not dispute that Allison engaged in protected activity by requesting leave for his hypertension, shoulder problems, and back condition in January, March, and May 2019, and requesting FMLA paperwork on June 25, 2019. (Mem. at 8–12; Reply at 12–13.) Nor does Paratech dispute that Allison's termination was an adverse action. (Mem. at 8–12; Reply at 12–14.) Rather, Paratech argues that Allison cannot establish that his protected activities caused his termination. (Mem. at 8–12; Reply at 12–14.) In response, Allison raises two arguments that we

19

dealt with in the previous section: (1) that he "had no absences which lead [sic] to his termination other than June 24, 2019 and July 15, 2019;" and (2) that he was terminated after he requested FMLA paperwork and Paratech was on notice of his upcoming doctor's appointment. (Opp'n at 12.)

For the reasons provided above, we reject both arguments. There is no evidence in the record to suggest that Allison was terminated because of the June 24 and July 15 absences only, and the timing of Allison's termination has not created a triable issue of fact. Paratech appropriately applied its attendance policies and terminated Allison for a legitimate reason. Allison has not given a reasonable factfinder a basis to conclude that Paratech's rationale was pretextual. Accordingly, we grant Paratech's motion for summary judgment on Allison's ADA retaliation claim (Count II).

## III.    Allison's FMLA Interference Claim (Count III)

In Count III of his Complaint, Allison alleges that Paratech violated the FMLA by interfering with "the exercise of or attempt to exercise" rights provided in the FMLA. 29 U.S.C. § 2615(a)(1); (Compl. ¶¶ 52–58). To establish an FMLA interference claim, an employee must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Ruckebeil v. Cancer Treatment Ctrs. of Am., Inc*., No. 15 C 08259, 2016 WL 878585, at *2 (N.D. Ill. Mar. 8, 2016) (quoting *Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010)); *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). "[N]o finding of ill intent is required." *Burnett*, 472 F.3d at 477.

20

Because Paratech appears to challenge only Allison's ability to satisfy the fourth and fifth elements, we confine our analysis to those elements. (*See* Mem. at 12.)

### A.  Whether Allison Provided Sufficient Notice

Paratech argues that Allison never completed his FMLA paperwork for any condition, but to the extent that he put Paratech on notice that he would need FMLA leave, it was for intermittent leave related to his back condition only. (Mem. at 12.)  In response, Allison argues that he put Paratech on notice that he would need leave for both his back condition *and* his hypertension on June 24, 2019. (Opp'n at 14.)  Allison further claims that he was not able to return the completed FMLA paperwork because Paratech terminated him two days before he was going to complete it. (*Id*. at 14–15.)

The FMLA's notice requirement is "not onerous." *Burnett*, 472 F.3d at 478.  An employee satisfies his notice obligations under the FMLA when he shares information "sufficient to show that he *likely* has an FMLA-qualifying condition." *Id*. at 479 (emphasis in original).  Viewing the evidence in the light most favorable to Allison, there is a triable issue of fact as to whether Allison provided sufficient notice of his need for FMLA leave related to his back, but not his hypertension.

Allison claims that he and Paratech "first discussed [his] FMLA leave because of his chronic back pain and hypertension disability on June 24, 2019." (Opp'n at 14.)  However, the materials that he cites do not support that proposition. (*See, e.g.,* Pl. Resp. to Def. SOF ¶ 38; Pl. Dep. Tr. at 73:3–11, 75:12–24.)  The available evidence suggests that Allison requested FMLA paperwork on June 25, 2019, and that when he did, he indicated that the paperwork was for possible intermittent leave related to his back only. (Pl. Resp. to Def. SOF ¶ 5.)  Keeping in mind that the notice requirement under the FMLA is "not onerous," a finder of fact would have to determine whether the information that Allison provided to Paratech was sufficient to apprise

Paratech that he intended to take FMLA leave for his back. But none of the evidence cited by Allison provides a basis for a reasonable factfinder to conclude that Allison sufficiently notified Paratech of his intent to take FMLA leave for hypertension.

Because there is a triable issue of fact as to whether Allison provided notice of his intent to take FMLA leave for his back condition, we must also consider whether Paratech denied Allison an FMLA benefit to which he was entitled.

**B.     Whether Paratech Denied Allison an FMLA Benefit to Which He Was Entitled**

In Paratech's view, it never denied Allison leave for his back condition because Allison never submitted a completed request seeking leave for this condition in the first place; therefore, Paratech never denied Allison an FMLA benefit to which he was entitled. (Mem. at 12.) Allison argues that he was denied an FMLA benefit because he was terminated after Paratech "was put on notice [that he] requested FMLA and on notice of his upcoming scheduled doctor's appointment to have the FMLA documents completed." (Opp'n at 15.)

Termination may constitute a denial of FMLA benefits. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) ("A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory . . . ."). If an employee claims that his employer denied him FMLA benefits by terminating him, the employer may rebut the claims by showing that the employee would have been fired regardless of whether he had taken leave. *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012); *Coleman v. Ill. Dep't of Human Servs.*, No. 09 C 3596, 2013 WL 5348314, at *18 (N.D. Ill. Sept. 24, 2013). The employee would then have to overcome the employer's evidence to survive summary judgment. *Pagel*, 695 F.3d at 629; *Coleman*, 2013 WL 5348314, at *18.

Allison seems to be saying that Paratech terminated him because it anticipated that he would be taking leave related to his back, including for the doctor's appointment on July 18, 2019. (*See* Opp'n at 15.) However, Paratech has put forth evidence showing that Allison's termination had nothing to do with his intent to take FMLA leave related to his back. Specifically, both Tischer and Watson testified that they decided to terminate Allison for excessive absenteeism. (Tischer Dep. Tr. at 18:9–10; Watson Dep. Tr. at 33:7–34:16.) As discussed above, Allison received three warnings for absenteeism—none of which related to his back. (*See* Dkt. No. 29-7; Pl. Resp. to Def. SOF ¶¶ 18, 22–24.) After his third and final warning, he had three, additional unexcused absences—none of which related to his back. (Pl. Resp. to Def. SOF ¶¶ 25, 37, 40.) Paratech admitted that to the extent these were medical leaves, it would have excused them if Allison had provided proper documentation. (Def. SOF ¶ 27.) However, Allison failed to bring in notes from his doctor following both the June 24 and July 15, 2019 absences. (Pl. Resp. to Def. SOF ¶ 37; Pl. Dep. Tr. at 74:9–75:5, 78:16–79:8.) When asked to bring in a note for the July 15 absence, Allison refused. (Pl. Dep. Tr. at 78:16–79:8.) Allison admitted that he did not believe that he should have to bring in doctors' notes excusing his absences when he called in sick. (Pl. Resp. to Def. SOF ¶ 44.)

Thus, when Watson and Tischer decided to terminate Allison, there was no indication that he intended to provide the requested documentation to Paratech. (*See* Def. Resp. to Pl. SOF ¶ 13; Watson Dep. Tr. at 31:1–6.) Allison argues otherwise, contending that the screenshot of an appointment that he sent to Watson after the termination decision was made should have notified Paratech that he intended to cure his documentation issues. (Watson Dep. Tr. at 31:1–6; Opp'n at 15.) But Allison's argument requires too many inferential leaps. The screenshot did not indicate the purpose of the appointment. (*See* Dkt. No. 29-15 at 7.) Nor did Allison disclose the

23

purpose of the appointment at any point prior to his termination. (*Id.*; Watson Dep. Tr. at 33:7–34:16; Tischer Dep. Tr. at 24:14–20.)  And the last time that Allison had mentioned the possibility of taking leave related to his back was nearly three weeks prior to his termination, on June 25, 2019.  (*See* Pl. Resp. to Def. SOF ¶¶ 38–39.)  "The FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence."  *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008).  Accordingly, Allison's argument is unpersuasive and does not demonstrate the existence of a triable issue of fact.

Allison offers no other reason to conclude that Paratech's termination was improper or that Paratech would not have fired him but for Allison's anticipated FMLA leave.  (*See* Opp'n at 13–14.)  Accordingly, Allison has not overcome Paratech's showing that it would have terminated Allison regardless of his intent to take FMLA leave.  *See Pagel*, 695 F.3d at 629; *Coleman*, 2013 WL 5348314, at *18.  Because there is no evidence from which a factfinder could conclude that Allison was denied FMLA benefits related to his back, we grant Paratech's motion for summary judgment as to Allison's FMLA interference claim (Count III).

## IV.    Allison's FMLA Retaliation Claim (Count IV)

In Count IV of his Complaint, Allison claims that Paratech retaliated against him "for exercising or attempting to exercise his FMLA rights."  (Compl. ¶¶ 59–64.)  By this, he means that Paratech terminated him for requesting FMLA paperwork.  (Opp'n at 13.)

The FMLA prohibits employers from retaliating against employees for engaging in statutorily protected activity.  29 U.S.C. § 2615(a)(2); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015); *Malone v. Securitas Sec. Servs.*, No. 13 C 8747, 2015 WL 5177549, at *2 (N.D. Ill. Sept. 3, 2015).  To succeed on his FMLA retaliation claim, Allison

24

"'must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011) (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)); *Tarpley v. City Colls. of Chi.*, 752 F. App'x 336, 346 (7th Cir. 2018). "[A] retaliation claim requires proof of discriminatory or retaliatory intent." *Nicholson*, 690 F.3d at 825.

Paratech does not appear to dispute that Allison's request for FMLA paperwork is a protected activity or that Allison suffered a "materially adverse action." (*See generally* Mem. at 13–15.) Rather, Paratech argues that there is no relationship between the request for paperwork and Allison's termination. (*Id.*) Accordingly, we will limit our analysis to causation.

To survive Paratech's motion for summary judgment on his FMLA retaliation claim, Allison must submit evidence that his FMLA-protected conduct was at least a "substantial or motivating factor" in Paratech's decision to terminate his employment. *Rayford v. La Petite Acad., Inc.*, No. 19 C 7877, 2021 WL 2311968, at *4 (N.D. Ill. June 4, 2021) (quoting *Goelzer*, 604 F.3d at 995); *Huff v. SOS Children's Vills., Ill.*, No. 19-CV-4268, 2021 WL 1172655, at *8 (N.D. Ill. Mar. 29, 2021). Summary judgment for an employer is appropriate where the employer presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff even if it had no retaliatory motive. *Burnett*, 472 F.3d at 481.

Here, there is no direct or circumstantial evidence that Allison's request for FMLA paperwork had any causal connection to his termination. *See Freelain v. Vill. of Oak Park*, No. 13 CV 3682, 2016 WL 6524908, at *5 (N.D. Ill. Nov. 3, 2016) (concluding that defendant was entitled to summary judgment on plaintiff's FMLA retaliation claim because there was no causal connection between defendant's actions and plaintiff's activity, and plaintiff had failed to rebut

defendant's explanation for its actions with evidence of pretext).  The sole evidence of causation Allison offers is the timing of his termination, as he was terminated on July 16, 2019, approximately three weeks after he requested FMLA paperwork on June 25, 2019.  (*See* Opp'n at 1, 13.)  However, suspicious timing alone is rarely sufficient to prevent summary judgment on FMLA retaliation claims.  *Zedov v. Mr. Bult's Inc.*, No. 18-CV-7289, 2020 WL 1530752, at *5 (N.D. Ill. Mar. 31, 2020) (citing *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 369 (7th Cir. 2020)); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("We have repeatedly held that 'temporal proximity' or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment") (internal citations omitted).  "[T]he timing of termination is not, by itself, a ticket to trial."  *Simpson v. Off. of Chief Judge of Circuit Ct. of Will Cnty.*, 559 F.3d 706, 713 (7th Cir. 2009).

Instead, "[a] plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation."  *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017); *cf. Ricco v. Sw. Surgery Ctr., LLC*, 73 F. Supp. 3d 961, 972 (N.D. Ill. 2014) (plaintiff created a genuine issue of fact regarding her FMLA claim by showing suspicious timing *and* providing some evidence that the justification for her termination was pretextual).  Allison has not done so.  The evidence shows that the timing of Allison's termination correlated not with his FMLA paperwork request, but with the unexcused absences throughout 2018 and 2019 that violated Paratech's attendance policies.  (*See* Tischer Dep. Tr. at 18:22–19:23; Watson Dep. Tr. at 13:2–24; Pl. Dep. Tr. at 78:16–79:8.)

Indeed, "a track record of job performance issues prior to the employee's protected activity does not establish circumstantial evidence in support of a retaliation claim."  *Curtis*, 807 F.3d at 221; *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009) ("[A] decline in

26

performance before the employee engages in protected activity does not allow for an inference of retaliation."); *see also Nicholson*, 690 F.3d at 827–28 (timing of termination was not circumstantial evidence of retaliatory intent where plaintiff had not made progress on her performance-improvement plan). "Summary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance." *Curtis*, 807 F.3d at 221 (citing *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 752 (7th Cir. 2009) (employer produced undisputed evidence that employee was fired for misconduct, after numerous job performance problems, so there was "no dispute" regarding employer's motivation for firing employee); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633–34 (7th Cir. 2009) (where employer found several problems with employee's performance, employee could not establish causal connection "because [employer's] actions do not suggest [employer] was acting under a prohibited animus").

Given Allison's subpar track record for attendance over the preceding months, a reasonable factfinder would not find that Paratech fired Allison because the company knew he was going to request FMLA leave. (Opp'n at 13.) As discussed above, Paratech provided Allison with FMLA paperwork a few weeks before his termination, but he never completed it. (Pl. Resp. to Def. SOF ¶¶ 38–39; Pl. Dep. Tr. at 73:6–15.) After Allison missed work on July 15, 2019, Watson asked him to submit a doctor's note, but Allison refused. (Pl. Dep. Tr. at 78:9–79:4.) At that point, it was reasonable for Paratech to assume that Allison was unwilling to provide the materials that it had requested. Watson and Tischer discussed the matter and decided to fire Allison before the close of business on July 15, 2019. (Def. Resp. to Pl. SOF ¶ 13; Watson Dep. at Tr. 31:1–6.) *After* the decision had been made, Allison texted Watson an image of his July 18, 2019 doctor's appointment. (Watson Dep. at Tr. 31:1–6; Dkt. No. 29-15 at 7; Pl.

Dep. Tr. at 76:10–77:10; Def. SOF ¶ 47.)  The text did not mention the purpose of the doctor's visit, nor did Allison explain the purpose of the visit during his meeting with Tischer and Watson on July 16, 2019.  (*See* Dkt. No. 29-15 at 7; Watson Dep. Tr. at 33:7–34:16; Tischer Dep. Tr. at 24:14–20.)  These facts, combined with Allison's history of unexcused absences and the numerous warnings that Allison received, point to only one reasonable conclusion: Allison was terminated for excessive, unexcused absenteeism—not because Paratech suspected that Allison would take FMLA leave.  (*See* Pl. Resp. to Def. SOF ¶¶ 25, 26, 37–47.)

Because no reasonable factfinder could find in Allison's favor on his FMLA retaliation claim, we grant Paratech's motion for summary judgment as to that claim (Count IV).

## CONCLUSION

For the foregoing reasons, we grant Defendant Paratech, Inc.'s motion for summary judgment as to all of Plaintiff Jermaine Allison's claims.  (Dkt. No. 27.)  This civil case is terminated.  It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: October 7, 2021
        Chicago, Illinois